Fred W. Schwinn (SBN 225575)
Raeon R. Roulston (SBN 255622)
CONSUMER LAW CENTER, INC.
12 South First Street, Suite 1014
San Jose, California 95113-2418
Telephone Number: (408) 294-6100
Facsimile Number: (408) 294-6190
Email Address: fred.schwinn@sjconsumerlaw.com

Attorneys for Plaintiff
LARRY DEAN DAVIS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| LARRY DEAN DAVIS,<br><br>                     Plaintiff,<br>  v.<br><br>MIDLAND FUNDING, LLC, a Delaware limited liability company; MIDLAND CREDIT MANAGEMENT, INC., a Kansas corporation; THE BRACHFELD LAW GROUP, A PROFESSIONAL CORPORATION, a California corporation; and ERICA LYNN BRACHFELD, individually and in her official capacity;<br><br>                     Defendants. | Case No. 2:13-CV-02316-LKK-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BASED ON LACK OF SUBJECT MATTER JURISDICTION BY DEFENDANTS MIDLAND CREDIT MANAGEMENT, INC. AND MIDLAND FUNDING, LLC**<br><br>Hearing Date:     July 7, 2014<br>Hearing Time:     10:00 a.m.<br>Hearing Judge:    Lawrence K. Karlton<br>Hearing Courtroom: 4, 15th Floor<br>Hearing Location:  501 I Street<br>                                Sacramento, California |

      COMES NOW Plaintiff, LARRY DEAN DAVIS (hereinafter "Plaintiff"), by and through his attorneys Fred W. Schwinn and Raeon R. Roulston of Consumer Law Center, Inc., and hereby submits his Memorandum of Points and Authorities in Opposition to the <u>Motion for Summary Judgment Based on Lack of Subject Matter Jurisdiction by Defendants Midland Credit Management, Inc. and Midland Funding, LLC</u> (Doc. 36).

**I. INTRODUCTION**

      As a threshold matter, Defendants have styled this Motion as a Motion for Summary Judgment.

- 1 -
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT    Case No. 2:13-CV-02316-LKK-CKD

However, given Defendants' argument that the Court does not have federal question jurisdiction, the Motion is more properly read as a Motion to Dismiss pursuant to Fed R. Civ. P. 12(b)(1).  Plaintiff's position is that the Court has jurisdiction, and the real issue for the Court to decide is whether Plaintiff can show the "consumer debt" element of his FDCPA claim.  Defendants' argument that a person being dunned for a <u>nonexistent</u> debt cannot meet the "consumer debt" element, and thus is outside the protection of the FDCPA, is not merely wrong, but is absurd in the context of the remedial purpose of the FDCPA.  In fact, one court called the theory advanced by Defendants in this case "nonsensical."[1]

This case is brought by an individual consumer to address Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (hereinafter "FDCPA") and of the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.33 (hereinafter "RFDCPA").  The violations stem from Defendants' attempts to collect a consumer debt from Plaintiff.

Generally, on a date or dates unknown to Plaintiff, an unrelated third-party with the name "Larry D. Davis" and an address in Plano, Texas, is alleged to have incurred a financial obligation, namely a consumer credit account issued by CitiFinancial, Inc. (hereinafter "the alleged debt").  Sometime after "Larry D. Davis" defaulted on his payments, the alleged debt was sold, assigned or otherwise transferred to MIDLAND FUNDING for collection.  Thereafter, Defendants attempted to collect the debt from Plaintiff, despite being informed by Plaintiff that that they were attempting to collect a debt from the wrong "Larry D. Davis," and being provided the last two digits of Plaintiff's social security number, which did not match those of the account Defendants were attempting to collect.  In spite of being informed on multiple occasions that Defendants were attempting to collect a debt from the wrong "Larry D. Davis," Defendants initiated suit against Plaintiff in the Superior Court of California, Placer County.  After being served, Plaintiff informed Defendants yet again that they

---

[1] *Heathman v. Portfolio Recovery Assocs., LLC*, 2013 U.S. Dist. LEXIS 27057 at *13 (S.D. Cal. Feb. 27, 2013).

were collecting a nonexistent debt.  Despite this, Defendants proceeded to obtain a default judgment against Plaintiff.  As a result of Defendants' actions, Plaintiff was forced to retain counsel to assist him in this matter, thereby incurring actual damages in the form of attorney fees and costs.

Plaintiff alleges that Defendants violated the FDCPA and RFDCPA by: engaging in conduct, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with the collection of an alleged debt; making and using false, deceptive, and misleading representations in an attempt to collect a nonexistent debt from Plaintiff; misrepresenting the character or legal status of a nonexistent debt; misrepresenting the compensation which may be lawfully received by Defendants for the collection of a nonexistent debt; misrepresenting that MIDLAND FUNDING was lawfully entitled to collect a nonexistent debt from Plaintiff; attempting to collect a nonexistent debt from Plaintiff; engaging in an unfair and unconscionable practices in an attempt to collect a nonexistent debt; and attempting to collect interest, fees, or other charges from Plaintiff that were not permitted by law. Plaintiff has also alleged malicious prosecution and seeks punitive damages, as well as statutory damages, and reasonable attorney fees.

## II.  SUMMARY OF ARGUMENT

It is long-settled that coverage of the FDCPA reaches consumers mistakenly dunned for a debt and those consumers who have no actual debt.  Defendants argue that the debt being collected is actually owed by an unrelated third-party, and Plaintiff has no knowledge whether *that* debt is a consumer debt, thus the Court lacks subject matter jurisdiction.  However, the existence of an unrelated third-party who may legitimately owe a debt is irrelevant.  Because Plaintiff alleges that Defendants attempted to collect a <u>nonexistent</u> debt from Plaintiff, the Court has subject matter jurisdiction over this Complaint, and Defendants' motion should be denied.

/ / /

### III.  PROCEDURAL HISTORY

On November 6, 2013, Plaintiff filed a Complaint in this action against Defendants.[2]  Thereafter Defendants, MIDLAND CREDIT MANAGEMENT, INC. ("MCM"), and MIDLAND FUNDING, LLC, filed their Answer.[3]  On January 2, 2014, the Court entered the default of Defendants, ERICA LYNN BRACHFELD ("BRACHFELD"), and THE BRACHFELD LAW GROUP, A PROFESSIONAL CORPORATION.[4]  Thereafter the parties stipulated to set aside the entry of default as to the Brachfeld Defendants, and the Court entered an Order thereon.[5]  The Brachfeld Defendants' previously filed Answers[6] were deemed filed by this Order.

On February 3, 2014, Plaintiff filed a Motion to Strike Affirmative Defenses in the Answers of the Brachfeld Defendants,[7] which the Court granted.[8]  On June 5, 2014, the Midland Defendants filed this Motion for Summary Judgment,[9] which was joined by the Brachfeld Defendants.[10]  This Memorandum of Points and Authorities is submitted in opposition thereto.

### IV.  RELEVANT FACTS ALLEGED IN THE COMPLAINT

On a date or dates unknown to Plaintiff, an unrelated third party with the name "Larry D. Davis" and an address in Plano, Texas, is alleged to have incurred a financial obligation, namely a consumer credit account issued by CitiFinancial, Inc. (hereinafter "the alleged debt").[11]  The debt was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).[12]  Some time after "Larry D. Davis" defaulted on his payments, the alleged debt was

---
[2] Doc. 1.
[3] Doc. 9.
[4] Doc. 14.
[5] Doc. 21.
[6] Docs. 16, 17.
[7] Doc. 22.
[8] Doc. 27.
[9] Doc. 36.
[10] Doc. 37.
[11] Complaint (Doc. 1) at ¶ 20.
[12] Id.

sold, assigned, or otherwise transferred to MIDLAND FUNDING for collection.[13]

On or about September 21, 2010, Plaintiff received a telephone call from MCM, attempting to collect the defaulted consumer debt owed by "Larry D. Davis." Plaintiff informed MCM that he had no unpaid debts and that MCM was attempting to collect the alleged debt from the wrong "Larry D. Davis."[14] During this call, Plaintiff provided MCM with the last two digits of his Social Security number and was told by MCM's representative that the numbers provided did not match the Social Security number on the account being collected and that MCM would investigate the matter further.[15]

On or about March 19, 2011, Defendants sent a collection letter to Plaintiff in an attempt to collect the alleged debt.[16] Thereafter, Plaintiff received a collection letter from Quest Diagnostics for a medical debt owed by a "Larry D. Davis" in Plano, Texas. Plaintiff telephoned the medical office listed on the collection letter and explained that they were attempting to collect from the wrong "Larry D. Davis." Plaintiff was then given the mailing address and telephone number of the correct "Larry Davis" who lived in Plano, Texas.[17]

On or about June 7, 2011, Plaintiff telephoned BRACHFELD LAW GROUP, and spoke to a representative named "Stephanie." Plaintiff provided "Stephanie" with the account information from Defendants' March 19, 2011, collection letter (Exhibit "1") and informed Defendants that they were attempting to collect the alleged debt from the wrong "Larry D. Davis."[18] During this telephone call, Plaintiff also provided Defendants with the mailing address and telephone number of the correct "Larry D. Davis" in Plano, Texas.[19]

On or about July 15, 2011, Defendants sent another collection letter to Plaintiff in an attempt to

---

[13] Complaint (Doc. 1) at ¶ 21.
[14] *Id.* at ¶ 22.
[15] *Id.* at ¶ 22.
[16] *Id.* at ¶ 23.
[17] *Id.* at ¶ 25.
[18] Complaint (Doc. 1) at ¶ 26.
[19] *Id*.

collect the alleged debt.[20]  On or about October 7, 2011, Defendants sent another collection letter to Plaintiff in an attempt to collect the alleged debt.[21]  Thereafter, on or about October 16, 2011, Plaintiff mailed a copy of the October 7, 2011, collection letter to BRACHFELD LAW GROUP with a request that Defendants provide Plaintiff with a copy of the credit application for the alleged debt with the signature of "Larry D. Davis."[22]

On or about October 4, 2011, Defendants filed a lawsuit against Plaintiff in the Superior Court of California, Placer County captioned *Midland Funding, LLC v. Larry Davis, et al.*, Case No. MCV0052495 which sought to collect $3,699.09 in damages and interest at the rate of 10% from October 30, 2009 (hereinafter the "state court action").[23]  The Complaint in the state court action was drafted and signed by BRACHFELD on behalf of BRACHFELD LAW GROUP and MIDLAND FUNDING.[24]  The Complaint in the state court action falsely stated that Plaintiff had become indebted to MIDLAND FUNDING's predecessor-in-interest, Citibank, based on the theories of: 1) an open book account; 2) an account stated in writing; 3) goods wares and merchandise sold and delivered to Plaintiff for which Plaintiff promised to pay Citibank; 4) money lent to Plaintiff at Plaintiff's request; 5) money paid out, laid out and expended to or for Plaintiff at Plaintiff's special instance and request; and 6) services rendered and/or goods, wares, and merchandise and/or extension of credit at Plaintiff's special instance and request .[25]

On or about October 20, 2011, Defendants served copies of the Complaint filed in the state court action on Plaintiff's wife.[26]  Thereafter, on or about October 20, 2011, Plaintiff contacted Defendants by telephone and informed Defendants that Plaintiff never had an account with Citibank,

---

[20] Complaint (Doc. 1) at ¶ 27.
[21] *Id.* at ¶ 29.
[22] *Id.* at ¶ 31.
[23] *Id.* at ¶ 32.
[24] *Id.* at ¶ 33.
[25] Complaint (Doc. 1) at ¶¶ 34-45.
[26] *Id.* at ¶ 57.

that Plaintiff had no outstanding or unpaid credit card accounts, and that Defendants were suing the wrong person.[27] Thereafter, Defendants had actual knowledge that they had sued the wrong person.[28]

When Plaintiff received no further communication from Defendants, Plaintiff assumed that Defendants had realized that Plaintiff was not the proper party in the state court action, and that the state court action had been dismissed.[29] Despite being notified by Plaintiff that they were suing the wrong person, Defendants maliciously continued to pursue the state court complaint against Plaintiff. On or about November 6, 2012, Defendants sent a collection letter and a Request for Entry of Default and Court Judgment to Plaintiff in an attempt to collect the alleged debt.[30] The Request for Entry of Default and Court Judgment bears the electronic signature of BRACHFELD.[31]

After receiving the November 6, 2012, collection letter and Request for Entry of Default and Court Judgment, Plaintiff again telephoned BRACHFELD LAW GROUP and again told their representative that Defendants had sued the wrong "Larry Davis."[32] Despite being notified yet again that they were suing the wrong person, Defendants continued to pursue the state court action against Plaintiff. On or about November 14, 2012, Defendants filed a document titled Declaration in Support of Application for Entry of Judgment Pursuant to CCP § 585(d) in the state court action.[33]

The Declaration in Support of Application for Entry of Judgment Pursuant to CCP § 585(d) was drafted by BRACHFELD, approved and ratified by BRACHFELD LAW GROUP and MIDLAND FUNDING, and signed by MCM on behalf of MIDLAND FUNDING.[34] On or about November 19, 2012, the Superior Court of California in Placer County entered a Judgment by default in the amount of

---

[27] Complaint (Doc. 1) at ¶ 58.
[28] Id.
[29] Id. at ¶ 60.
[30] Id. at ¶ 62.
[31] Id. at ¶ 64.
[32] Complaint (Doc. 1) at ¶ 69.
[33] Id. at ¶ 71.
[34] Id. at ¶ 73.

$5,067.91 against Plaintiff in the state court action at Defendants' request.[35]  On or about December 6, 2012, Defendants sent a collection letter and a <u>Notice of Entry of Judgment or Order</u> to Plaintiff in an attempt to collect the alleged debt.[36]

The December 6, 2012, collection letter falsely represented that BRACHFELD LAW GROUP "represented CitiFinancial," and that CitiFinancial was "the owner of the enclosed judgment."[37]  The <u>Notice of Entry of Judgment or Order</u> bears the electronic signature of BRACHFELD.[38]  Upon receipt of Defendants' December 6, 2012, collection letter and <u>Notice of Entry of Judgment or Order</u> it became clear to Plaintiff that Defendants had refused to dismiss the state court action and would instead continue to pursue him to collect a debt that he did not owe.[39]

On or about January 25, 2013, Plaintiff was required to retain legal counsel at his own expense, thereby incurring actual damages in the form of attorney fees and costs.[40]  On March 5, 2013, the Entry of Default entered on November 14, 2012, and the Judgment by default entered on November 19, 2012, against Plaintiff in the state court action were vacated by stipulation.[41]  Thereafter, on March 18, 2013, the state court action was dismissed without prejudice at Defendants' request.[42]  These facts show that Defendants filed and continued to prosecute the state court collection action against Plaintiff – the wrong "Larry D. Davis" – for 5 months after they had been repeatedly notified, before and after the filing of the state court action, that Plaintiff did not lawfully owe the debt being collected.[43]

Based on these facts, Plaintiff's <u>Complaint</u> alleges that:

/ / /

---

[35] <u>Complaint</u> (Doc. 1) at ¶ 74.
[36] *Id.* at ¶ 75.
[37] *Id.* at ¶¶ 77-78.
[38] *Id.* at ¶ 79.
[39] *Id.* at ¶ 84.
[40] <u>Complaint</u> (Doc. 1) at ¶ 85.
[41] *Id.* at ¶ 84.
[42] *Id.* at ¶ 87.
[43] *Id.* at ¶ 88.

- Defendants engaged in conduct, the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with the collection of an alleged debt, in violation of 15 U.S.C. § 1692d;[44]

- Defendants made and used false, deceptive and misleading representations in an attempt to collect a nonexistent debt from Plaintiff, in violation of 15 U.S.C. §§ 1692e and 1692e(10);[45]

- Defendants misrepresented the character, amount or legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A);[46]

- Defendants misrepresented the compensation which may be lawfully received by Defendants for the collection of the debt, in violation of 15 U.S.C. § 1692e(2)(B);[47]

- Defendants misrepresented that MIDLAND was lawfully entitled to collect a nonexistent debt from Plaintiff, in violation of 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10);[48]

- Defendants attempted to collect the debt from Plaintiff, an action that cannot lawfully be taken, in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10);[49]

- Defendants engaged in an unfair and unconscionable practices in an attempt to collect a nonexistent debt, in violation of 15 U.S.C. § 1692f;[50] and

- Defendants attempted to collect interest, fees or other charges from Plaintiff that were not permitted by law, in violation of 15 U.S.C. § 1692f(1).[51]

### V. POINTS AND AUTHORITIES

**A. STANDARD OF REVIEW**

The standard of review for a motion for summary judgment is that the moving party is entitled to summary judgment when the evidence shows that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.[52] The Court must determine "whether there

---

[44] Complaint (Doc. 1) at ¶ 98(a).
[45] *Id.* at ¶ 98(b).
[46] *Id.* at ¶ 98(c).
[47] *Id.* at ¶ 98(d).
[48] *Id.* at ¶ 98(e).
[49] Complaint (Doc. 1) at ¶ 98(f).
[50] *Id.* at ¶ 98(g).
[51] *Id.* at ¶ 98(h).
[52] Fed. R. Civ. P. 56(c); *Stockton Wire Products, Inc. v. K-Lath Corp.,* 440 F.2d 782 (9th Cir. 1971).

is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[53] "Only disputes over facts that might affect the outcome of the suit under governing law will . . . preclude summary judgment."[54] When the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[55] In some cases, the evidence of the opposing party is so weak as to "fail[] to raise a material issue of fact."[56]

To succeed on a motion for summary judgment, the movant must carry the burden of "identifying those parts of the record that indicate the absence of a genuine issue of material fact."[57] Once this burden is met, the non-movant is required to "come forward with specific facts showing that there is a genuine issue for trial" as to elements essential to the non-movant's claim.[58]

The Court must resolve all disputed facts and weigh all evidence "in the light most favorable to the nonmoving party."[59] As noted above, the requirement that a "genuine" issue of fact must be present has been interpreted to mean that the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party.[60]

**B. DEFENDANTS VIOLATED THE FDCPA BY ATTEMPTING TO COLLECT A NONEXISTENT DEBT FROM PLAINTIFF.**

Defendants' Motion is an attempt at wholesale misdirection. This case is not about the debt that the unrelated "Larry D. Davis" presumably owed to CitiFinancial, or the nature of *that* debt. This case

---

[53] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 212 (1986).
[54] *Id*. at 248.
[55] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).
[56] *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 906 (9th Cir. 1994).
[57] *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995).
[58] *Schneider v. TRW, Inc.,* 938 F.3d 986, 991 (9th Cir. 1990).
[59] *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630-31 (9th Cir. 1987).
[60] *Anderson*, 477 U.S. at 248.

is about the <u>nonexistent</u> debt that Defendants attempted to collect from Plaintiff. The fact that the parties have some idea of *why* the debt being collected is not owed by Plaintiff (*i.e.*, that the debt is presumably owed by the unrelated "Larry D. Davis" and Defendants dunned and sued the wrong person) does not change the basic facts. Defendants attempted to collect a <u>nonexistent</u> debt from Plaintiff that Plaintiff did not, and does not, owe. Such collection activities are squarely within the coverage of the FDCPA, and the Court has subject matter jurisdiction over FDCPA actions.[61]

Under the FDCPA, a "consumer" is defined as "any natural person *obligated or allegedly obligated* to pay any debt."[62] "The term "debt" means any *obligation or alleged obligation* of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.[63] "The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists."[64] Furthermore, "Congress designed the Federal Act to 'eliminate the recurring problem of debt collectors dunning the wrong person.'"[65] "Because the FDCPA is a remedial statute, it should be construed liberally in favor of the consumer,"[66] and, when in doubt, against debt collectors.[67]

When interpreting federal statutes, "the Court must . . . refuse . . . absurd and unforeseen result[s]."[68] By Defendants' reasoning, a wrongly dunned consumer, whether due to mistaken identity,

---

[61] 15 U.S. C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.")
[62] 15 U.S.C. 1692a(3) (emphasis added).
[63] 15 U.S.C. 1692a(5) (emphasis added).
[64] *Baker v. G. C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (quoting 1977 U.S. Code Cong. & Adm. News, 1695, 1696.).
[65] *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (quoting S.Rep. No. 382, 95th Cong.2d Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1699.).
[66] *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. 2006).
[67] *See Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 705 (9th Cir. 2010).
[68] *Henrique v. United States Marshal*, 653 F.2d 1317, 1320 (9th Cir. 1981).

being a victim of identity theft, or even the invention of a bogus debt by a malicious debt collector, could *never* bring an action before the Court due to the "unknown" nature of the alleged debt (if an actual *debt* even existed). However, this "tortured interpretation would absurdly absolve debt collectors from liability under the quintessential circumstances targeted by the FDCPA."[69] Recent district court cases in the Ninth Circuit affirm this view.[70]

Nor is this sound reasoning confined to the Ninth Circuit. In *Collins v. Portfolio Recovery Assocs., LLC*,[71] the Tennessee District Court sums up Plaintiff's argument eloquently:

> The Court believes that Defendants' position — that a consumer cannot pursue an FDCPA action where she alleges that she lacks knowledge of the nature of the obligation because of identity theft — is untenable. In this case, there is no evidence or suggestion that Capital One believed at the time that the account was opened (or that PRA believed that the time that it acquired the defaulted obligation) that it was extending an account for commercial debt. The account in question was a consumer credit card account opened in Plaintiff's name. Although Plaintiff lacks knowledge as to the nature and purpose of the charges accrued on the account, the balance on that account nonetheless must be deemed an alleged obligation for personal, family, or household purposes. To hold otherwise would defy common sense, as it would allow debt collectors to utilize unfair collection tactics against already vulnerable individuals — that is, those who have been subject to identity theft. Accordingly, the Court finds that, where the consumer lacks knowledge of the exact nature of the charges on an account due to alleged identity theft — as is the case here — the alleged obligation on a consumer account will nonetheless constitute a "debt" for purposes of the FDCPA analysis.[72]

The Ninth Circuit Court of Appeals specifically warned against such FDCPA interpretations antithetically favoring debt collectors to the disadvantage of consumers, reasoning that it would "find it nonsensical to create needless loopholes that work to the disadvantage of the individuals the FDCPA was enacted to protect."[73]

---

[69] *Heathman*, 2013 U.S. Dist. LEXIS 27057 at *15.
[70] *See Gonzalez v. Law Firm of Sam Chandra, APC*, 2013 U.S. Dist. LEXIS 126375 (E.D. Wash. Sept. 4, 2013) (the fact that the debt actually belonged to someone else does not strip Plaintiff of a cause of action under the FDCPA.); *Rutz v. Educ. Credit Mgmt. Corp.*, 2012 U.S. Dist. LEXIS 2820 (S.D. Cal. Jan. 9, 2012) (nonexistent debt was covered as an "alleged obligation.").
[71] 2013 U.S. Dist. LEXIS 162624 (E.D. Tenn. June 7, 2013).
[72] *Id.* at *14-15; *See also*, *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011) ("we read § 1692a(3) to include individuals who are mistakenly dunned by debt collectors.").
[73] *Clark*, 460 F.3d at 1172, n.7.

The recent Southern District of California case of *Heathman v. Portfolio Recovery Assocs., LLC*, cited above, is directly on point. The *Heathman* court reasoned that:

> "PRA concedes that it erroneously sued Heathman for a debt that she does not and never did owe. Yet, PRA argues ambiguity as to a nonparty's purported debt renders Heathman's claims nonactionable. This argument is nonsensical. The only debt at issue in this case is that which PRA erroneously alleged in the state court complaint and the only debt mentioned in the state court complaint is that purportedly owed by Heathman to PRA, a debt which PRA now admits never existed. Any other debt purportedly owed by anyone else is entirely irrelevant."[74]

The facts in the two cases are identical – a debt buyer sued a consumer on a non-existent debt, then argued that because it should have sued someone else, the nature of *that* purported debt controlled the case. The *Heathman* court reasoned that because the "case turns on the debt in fact alleged, not the debt that should have been alleged . . . [the debt collector's] post-hoc characterization of which debt it meant to target is entirely beside the point."[75] The Court should follow this line of reasoning here.

## VI. CONCLUSION

Because the FDCPA covers consumers dunned for nonexistent debts, the Court in this case has subject matter jurisdiction pursuant to 15 U.S.C. § 1692k(d). Defendants' argument is not only contrary to the overwhelming authority on this topic, but would, if adopted, lead to absurd and unreasonable results directly opposite to the stated purpose of the FDCPA. Accordingly, Plaintiff respectfully requests that this Court deny Defendants' Motion in its entirety.

ooOoo

---

[74] *Heathman*, 2013 U.S. Dist. LEXIS 27057 at *13-14.
[75] *Id.* at *15.

|   |   |
|---|---|
|   | CONSUMER LAW CENTER, INC. |
| Dated: June 23, 2014 | By: /s/ Fred W. Schwinn |
|   | Fred W. Schwinn (SBN 225575) |
|   | Raeon R. Roulston (SBN 255622) |
|   | CONSUMER LAW CENTER, INC. |
|   | 12 South First Street, Suite 1014 |
|   | San Jose, California 95113-2418 |
|   | Telephone Number: (408) 294-6100 |
|   | Facsimile Number: (408) 294-6190 |
|   | Email Address: fred.schwinn@sjconsumerlaw.com |
|   |   |
|   | Attorneys for Plaintiff |
|   | LARRY DEAN DAVIS |