1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   LARRY DEAN DAVIS,              No.  CIV. S-13-2316 LKK/CKD

12              Plaintiff,

13       v.                         **ORDER**

14   MIDLAND FUNDING, LLC, a
     Delaware limited liability
15   company; MIDLAND CREDIT
     MANAGEMENT, INC., a Kansas
16   corporation; THE BRACHFELD
     LAW GROUP, A PROFESSIONAL
17   CORPORATION, a California
     corporation; and ERICA LYNN
18   BRACHFELD, individually and
     in her official capacity,
19
                Defendants.
20

21       Plaintiff Larry Dean Davis sues defendants Midland Funding,

22   LLC, Midland Credit Management, Inc., Brachfeld Law Group, PC,

23   and attorney Erica Lynn Brachfeld, alleging claims under the

24   federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–

25   1692p ("FDCPA") and California's Rosenthal Fair Debt Collection

26   Practices Act, Cal. Civ. Code §§ 1788–1788.33 ("Rosenthal Act"),

27   as well as a state law claim for malicious prosecution. The

28   gravamen of plaintiff's complaint is that defendants wrongly

                                    1

1   attempted to collect an obligation from him that was actually

2   owed by another person.

3   **I.   FORM OF MOTION**

4       Defendants Midland Funding and Midland Credit Management

5   have moved for summary judgment. (ECF No. 36.) Defendants

6   Brachfeld Law Group and Erica Lynn Brachfeld join in this motion.

7   (ECF No. 37.) Plaintiff opposes, and also contends that this

8   motion is more properly considered a motion to dismiss for lack

9   of subject matter jurisdiction. (ECF No. 40.)

10      After the Status (Pretrial Scheduling) Conference held on

11  April 7, the court issued an order providing, in pertinent part:

12  "Jurisdiction . . . is disputed by all defendants. Defendant

13  shall bring on a motion for lack of jurisdiction within sixty

14  (60) days from the date of this order." (Order, April 8, 2014,

15  ECF No. 32.) Defendants' motion was filed on June 5, 2014, just

16  within the sixty-day deadline.

17      It does not appear that the court must decide whether

18  defendants' motion is better considered a motion for summary

19  judgment under Fed. R. Civ. P. 56 or a motion to dismiss for lack

20  of subject matter jurisdiction under Rule 12(b)(1). Defendants

21  incorrectly assert that this motion "involve[es] factual issues

22  which also go to the merits . . . ." (Motion 3, ECF No. 36.) It

23  does not. It presents a straightforward question of law: in order

24  to proceed in federal court under the FDCPA, must a plaintiff,

25  who alleges that he was subject to collection efforts on an

26  obligation that he does not owe, be able to establish that the

27  subject obligation is a "debt" within the meaning of 15 U.S.C.

28

§ 1692a(5)? Resolving this question does not hinge on any facts, disputed or undisputed, presented by the parties. As such, characterization of this motion as one brought under Rule 12(b)(1) or Rule 56 appears irrelevant.

**II.   BACKGROUND**

**A. Factual Background**

Given the purely legal nature of the question presented, it is immaterial whether the court herein deems the factual allegations in the complaint to be true (as it would in a motion brought under Rule 12) or instead relies on the admissible evidence submitted by the parties (as it would in a motion under Rule 56). Therefore, the court will summarize the relevant facts from both sources.

Plaintiff alleges as follows.

In September 2011, plaintiff, whose name is Larry Dean Davis, received a telephone call from a representative of defendant Midland Credit Management, who was attempting to collect an obligation owed by one "Larry D. Davis."[1] (Complaint ¶ 22.) Plaintiff informed the caller that the firm was attempting to collect from the wrong person, as plaintiff owed no debts. (Id.) Plaintiff provided the caller with the last two digits of his Social Security number; the caller confirmed that the numbers did not match the records for "Larry D. Davis." (Id.) The caller stated that the firm would investigate the matter. (Id.)

In March 2011, defendant Brachfeld Law Group sent defendant a collection letter. (Id. ¶¶ 23, 24, Ex. 1.) In a June 2011

---

[1] This individual is not a party to this action.

3

1   telephone call, plaintiff was informed that the "Larry D. Davis"

2   from whom Brachfeld Law Group was seeking to collect lived in

3   Plano, Texas. (Id. ¶ 26.) In July 2011 and October 2011,

4   Brachfeld Law Group again sent plaintiff collection letters. (Id.

5   ¶¶ 27, 29, Exs. 2, 3.)

6        On October 4, 2011, defendant Midland Funding, LLC filed a

7   lawsuit entitled Midland Funding, LLC v. Larry Davis,

8   No. MCV0052495, in the Superior Court of California for the

9   County of Placer ("State Court Action").[2] (Complaint ¶ 32.)

10  Midland Funding's counsel of record in the action was defendant

11  Erica L. Brachfeld, on behalf of the Brachfeld Law Group. (Id.

12  Ex. 4.) The complaint therein alleges that plaintiff is seeking

13  to collect a debt assigned to it by Citibank. (Id.)

14       Later that October, Plaintiff's wife was served with the

15  complaint in the State Court Action. (Id ¶ 57.) On the same day,

16  plaintiff contacted defendants and informed them that he had no

17  outstanding or unpaid credit cards accounts, and that they were

18  suing the wrong person. (Id. ¶ 58.) But defendants continued to

19  prosecute the State Court Action. (Id. ¶¶ 61.)

20       In November 2012, plaintiff was served with a Request for

21  Entry of Default and Court Judgment. (Id. ¶ 62, Ex. 5.) Plaintiff

22  again called the Brachfeld Law Group to inform them that

23  defendants had sued the wrong individual. (Id. ¶ 69.) Again,

24  defendants did not dismiss the State Court Action. (Id. ¶¶ 70-

25  71.)

26

27  [2] The collection letters were sent to plaintiff at an address in
    Lincoln, California. (Id. Exs. 1, 2.) Lincoln is located in
28  Placer County.

4

1  On November 19, 2012, the state court entered a default

2  judgment against plaintiff in the amount of $5,067.91 (Id. ¶ 74.)

3  On December 6, 2012, plaintiff received another collection

4  letter from defendants. (Id. ¶ 75, Ex. 7.)

5  After plaintiff retained counsel, the default and the

6  default judgment were vacated, and the State Court Action

7  dismissed. (Id. ¶¶ 85-87.)

8  The undisputed facts submitted by defendants are as follows.

9  On August 31, 2010, Midland Funding acquired an unpaid

10 financial obligation from CitiFinancial, Inc. belonging to an

11 individual named "Larry D. Davis." (Defendants term this

12 obligation the "Account.") (Statement of Undisputed Facts ("SUF")

13 3, ECF No. 36-1.) Midland Funding referred the Account to Midland

14 Credit Management for collection; when the latter was unable to

15 collect, it referred the Account to the Brachfeld Law Group for

16 collection. (SUF 4, 5.) Midland Funding and Midland Credit

17 Management lack any information as to whether the transactions

18 which comprise the unpaid balance of the Account were incurred

19 for personal, family, or household purposes. (SUF 6.)

20 **B. Procedural Background**

21 This action was commenced on November 6, 2013. (ECF No. 1.)

22 Defendants Midland Funding and Midland Credit Management filed a

23 joint Answer on December 17, 2013. (ECF No. 9.) Defendant

24 Brachfeld Law Group filed an Answer on January 13, 2014 (ECF

25 No. 16) and Erica Lynn Brachfeld filed an Answer on January 14,

26 2014 (ECF No. 17); the latter two defendants then filed a joint

27 First Amended Answer on March 16, 2014 (ECF No. 28).

28

**II.   ANALYSIS**

In 1977, Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). That same year, the California Legislature enacted the Rosenthal Act "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1(b). In 1999, the California Legislature substantially amended the Rosenthal Act to incorporate many FDCPA provisions by reference, thereby making violations of these provisions into Rosenthal Act violations. Cal. Civ. Code § 1788.17. While the FDCPA authorizes enforcement action by the federal Fair Trade Commission, 15 U.S.C. § 1692l, both statutes largely rely on the efforts of private attorneys to regulate the debt collection industry.

### A. Defendants' argument

Defendants advance a textual argument for why plaintiff's claims fall outside the FDCPA's ambit.

Plaintiff has pled claims under 15 U.S.C. § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt"), § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or

6

1   means in connection with the collection of any debt"), and

2   § 1692f ("A debt collector may not use unfair or unconscionable

3   means to collect or attempt to collect any debt").

4       Each of these provisions regulates debt collectors' conduct

5   when attempting to collect a "debt," which the FDCPA defines, in

6   turn, as "any obligation or alleged obligation of a consumer to

7   pay money arising out of a transaction in which the money,

8   property, insurance, or services which are the subject of the

9   transaction are primarily for personal, family, or household

10  purposes . . . ." 15 U.S.C. § 1692a(5).

11      At trial, plaintiff would ordinarily bear the burden of

12  showing, by a preponderance of the evidence, that the defendants

13  had violated the FDCPA. Among the elements that plaintiff would

14  have to prove is that defendants were attempting to collect a

15  "debt," as defined by the statute.

16      Defendants contend – and plaintiff does not dispute – that

17  plaintiff is unable to establish whether the alleged obligation

18  of "Larry D. Davis" which defendants sought to collect arose from

19  a "debt." But as (i) plaintiff is simply unaware of the nature of

20  the transactions, if any, which gave rise to the alleged

21  obligation, and (ii) each of the FDCPA provisions under which

22  plaintiff is proceeding proscribes conduct in the collection of a

23  "debt," it follows that the FDCPA cannot apply to defendants'

24  conduct herein. Or so defendants' argument goes.

25          **B. Authority cited**

26      Defendants cite three Ninth Circuit cases – <u>Bloom v. I.C.

27  Sys., Inc.</u>, 972 F.2d 1067 (9th Cir. 1992) (holding that whether

28

7

1  an obligation was incurred for "personal, family, or household

2  purposes" depends on the ultimate use of the borrowed funds);

3  Slenk v. Transworld Sys., Inc., 236 F.3d 1072 (9th Cir. 2001)

4  (holding that courts must "look to the substance of the

5  transaction and the borrower's purpose in obtaining the loan" in

6  deciding whether it was incurred for "personal, family, or

7  household purposes"); and Turner v. Cook, 362 F.3d 1219 (9th Cir.

8  2004) (holding that an obligation must be incurred in a

9  consensual transaction in order to qualify for FDCPA protection)

10  – in support of their position that plaintiff herein must prove

11  that they were seeking to collect a "debt," as that term is

12  defined under 15 U.S.C § 1692a(5).

13      This court has previously read Bloom, Slenk, and Turner

14  together to "yield[] the following test: a plaintiff alleging an

15  FDCPA violation must be able to show that the obligation giving

16  rise to the challenged collection efforts arose from a

17  transaction, first, involving a consensual dealing, and second,

18  the subject of which was primarily for personal, family, or

19  household purposes. In deciding the second question, courts may

20  look to the ostensible purpose for which the obligation was

21  entered into, but it is the funds' actual use that is paramount."

22  Davis v. Hollins Law, 968 F. Supp. 2d 1072, 1077 (E.D. Cal. 2013)

23  (Karlton, J.).

24      Taken literally, the court's prior reading of these

25  precedents might appear to support defendants' position. But, in

26  the court's view, these cases simply do not apply to the issue at

27  hand, as in none of them does the plaintiff dispute having

28
                                   8

incurred the subject obligation.[3] All three instead concern the
nature of the underlying obligation and whether the FDCPA was
intended to reach the collection of such obligations. This is a
legitimate inquiry because the FDCPA was not intended to address
the collection of commercial debts. The issue presented herein is
whether a debt collector that attempts to collect an obligation
from the wrong person is subject to the FDCPA, even if there is
some possibility that the underlying obligation stemmed from a
commercial transaction.

A number of prior cases reject defendants' line of argument.
See, e.g., Collins v. Portfolio Recovery Assocs., LLC, No. 2:12-
cv-138, 2013 U.S. Dist. LEXIS 162624 (E.D. Tenn. Jun. 7, 2013)
("The Court believes that Defendants' position — that a consumer
cannot pursue an FDCPA action where she alleges that she lacks
knowledge of the nature of the obligation because of identity
theft — is untenable."); Gonzalez v. Law Firm of Sam Chandra,
APC, No. 13-CV-0097-TOR, 2013 WL 4758944 , 2013 U.S. Dist. LEXIS
126375 (E.D. Wash. Sep. 4, 2013) ("Defendants 'alleged' that
Plaintiff owed a debt when they mailed her 'dunning' letters and
later garnished her wages using her Social Security number to

---

[3] Another case cited by defendants, Bartlett v. Blaser, Sorenson &
Oleson, No. 4:13-cv-00017-REB, 2014 WL 2780462, 2014 U.S. Dist.
LEXIS 85205 (D. Idaho Jun. 19, 2014) (Bush, M.J.), is similarly
inapt. There is no allegation therein that defendants had
directed collection efforts at the wrong plaintiff. Rather, the
Bartlett court granted summary judgment to the defendants, on the
grounds that the obligation that they sought to collect from
plaintiff (a state court judgment stemming from allegedly-
negligent plumbing work that he had performed) did not arise from
a "transaction," and therefore was not a "debt" within the
meaning of 15 U.S.C. § 1692a(5). This holding is perfectly
consistent with the rule derived above from Bloom, 972 F.2d at
1067, Slenk, 236 F.3d at 1072, and Turner, 362 F.3d at 1219.

identify her. The fact that the debt actually belonged to someone else does not strip Plaintiff of a cause of action under the FDCPA.").

Ultimately, the precedents that defendants cite in support of their position are simply unpersuasive.

### C. Statutory interpretation

It is also unclear whether defendants' reading of 15 U.S.C. § 1692a constitutes sound statutory interpretation.

15 U.S.C. § 1692a(5), the FDCPA subsection on which defendants rely, provides:

> The term "debt" means any obligation **or alleged obligation** of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. (emphasis added.)

Another FDCPA provision, 15 U.S.C. § 1692a(3), reads:

> The term "consumer" means any natural person obligated **or allegedly obligated** to pay any debt.

A final FDCPA provision, 15 U.S.C. § 1692a(6), reads in pertinent part:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due **or asserted to be owed or due** another. (emphasis added.)

The highlighted text strongly suggests that Congress intended the FDCPA to protect consumers who were subjected to collection efforts for obligations they did not owe.

Other courts concur. While the Ninth Circuit appears not to have considered the issue, the Eighth Circuit rejected an argument similar to defendants' (albeit one based on subsection (3), rather than subsection (5), both quoted above), reasoning as follows:

> [R]esolution of whether the plain language of § 1692a(3)'s "consumer" definition encompasses [plaintiff James] Dunham, someone mistakenly contacted by a debt collector, turns on the proper reading of the phrase "allegedly obligated to pay." [Defendant] PRA argues that because it erroneously contacted the wrong "James Dunham," it did not "allege" that Dunham was "obligated to pay any debt." In other words, PRA only alleged that the "James Dunham" who actually owes the payment obligation owed a debt, not the "James Dunham" who filed this lawsuit. Thus, PRA contends, Congress's decision to limit . . . protections only to "consumers" reflects a congressional desire to withhold a cause of action . . . from an individual like Dunham who a debt collector mistakenly contacts. Under PRA's interpretation of the [FDCPA], a person who has been abused by a debt collector's harassing tactics, which the FDCPA generally prohibits, could not invoke the protection of the FDCPA if the debt collector contacted the individual by mistake. This interpretation would read the phrase "allegedly obligated" to only apply to those who actually owe or owed the specific debt at issue, despite whether a debt collector asserted a person owes the specific debt. PRA's position too narrowly constricts the plain meaning of "alleged." [. . .] PRA alleged, albeit mistakenly, that Dunham owed the payment obligation. Simply put, a mistaken allegation is an allegation

> nonetheless. Thus, we read § 1692a(3) to
> include individuals who are mistakenly dunned
> by debt collectors.

<u>Dunham v. Portfolio Recovery Assocs., LLC</u>, 663 F.3d 997, 1002

(8th Cir. 2011). Another district court in the Ninth Circuit,

faced with the same argument, chose to follow <u>Dunham</u>:

> The Court finds [<u>Dunham</u>'s] reasoning
> persuasive and adopts it in full. Defendants
> "alleged" that Plaintiff owed a debt when
> they mailed her "dunning" letters and later
> garnished her wages using her Social Security
> number to identify her. The fact that the
> debt actually belonged to someone else does
> not strip Plaintiff of a cause of action
> under the FDCPA. These claims may proceed.

<u>Gonzalez v. Law Firm of Sam Chandra, APC</u>, No. 13-CV-0097-TOR,

2013 WL 4758944, 2013 U.S. Dist. LEXIS 126375 (E.D. Wash. Sep. 4,

2013).

This court finds the reasoning in these opinions to be

persuasive. By its plain text, the FDCPA encompasses claims

brought by individuals subjected to collection efforts for

obligations they are falsely alleged to have owed.

Nevertheless, the court recognizes that the circular

definitions in 15 U.S.C §§ 1692a(3) and (5) give rise to some

confusion. Subsection (3) defines "consumer" as "any natural

person obligated or allegedly obligated to pay any **debt**," and

subsection (5) defines "debt" as "any obligation or alleged

obligation of a **consumer** . . . ." It is therefore at least

possible to argue that, even if the FDCPA protects persons dunned

for others' obligations, 15 U.S.C. § 1692a(5) still requires

plaintiffs to characterize the nature of the underlying

12

1  obligation as one incurred for "personal, family, or household

2  purposes."

3      Such an interpretation runs afoul of the canon against

4  absurdities, a longstanding principle of statutory

5  interpretation. "All laws should receive a sensible construction.

6  General terms should be so limited in their application as not to

7  lead to injustice, oppression, or an absurd consequence. It will

8  always, therefore, be presumed that the legislature intended

9  exceptions to its language, which would avoid results of this

10  character. The reason of the law in such cases should prevail

11  over its letter." United States v. Kirby, 74 U.S. 482, 486-87

12  (1868). What must be avoided is "[t]o adopt such a construction

13  [as] would put a stop to the ordinary business of life. [. . .]

14  If a literal construction of the words of a statute be absurd,

15  the act must be so construed as to avoid the absurdity. The court

16  must restrain the words." Holy Trinity Church v. United States,

17  143 U.S. 457, 460 (1892). Nevertheless, the Supreme Court has

18  cautioned that courts should invoke the canon only "rarely . . .

19  to override unambiguous legislation." Barnhart v. Sigmon Coal

20  Co., Inc., 534 U.S. 438, 459 (2002). Ultimately, as Justice

21  Kennedy has observed, "[T]his narrow exception to our normal rule

22  of statutory construction does not intrude upon the lawmaking

23  powers of Congress, but rather demonstrates a respect for the

24  coequal Legislative Branch, which we assume would not act in an

25  absurd way." Public Citizen v. U.S. Dept. of Justice, 491 U.S.

26  440, 470 (1989) (Kennedy, J., concurring).

27      It would be absurd to hold that a plaintiff who is subject

28  to debt collection efforts for an obligation that he does not owe

1   is ineligible for the FDCPA's protections simply because he
2   cannot characterize the nature of that obligation.

3       Such a holding is absurd because it would fail to restrain
4   debt collectors from suing anyone, willy-nilly, whose name was
5   similar to that of an alleged debtor.[4] It is difficult to
6   conceive of a more *unfair* debt collection practice than dunning
7   the wrong person. This is particularly true given studies showing
8   that anywhere from 29% to well over 90% of debt collection
9   lawsuits result in default judgments in favor of the debt
10  collector or creditor. See Peter A. Holland, Junk Justice: A
11  Statistical Analysis of 4,400 Lawsuits Filed by Debt Buyers, 26
12  Loyola Consumer L. Rev. 179 (2014). Given these statistics, it is
13  quite likely that any given individual in plaintiff's position
14  who is sued for an obligation (particularly one who cannot afford
15  an attorney) would not appear in court and be adjudged liable for
16  someone else's debt. Plaintiff himself was adjudged in default
17  until he retained counsel.

18      The law provides a variety of methods to collect on a
19  judgment. To have one's wages garnished or one's bank account
20  levied for a debt one does not owe would "put a stop to the

21
22  [4] It is no answer to say that plaintiffs could seek redress in
    state court. Many states have not enacted legislation regulating
    debt collection practices. And, while California has codified the
23  Rosenthal Act, that Act is similar to the FDCPA in addressing the
    collection of "consumer debt," *i.e.*, "transaction[s] between a
24  natural person and another person in which property, services or
    money is acquired on credit by that natural person from such
25  other person **primarily for personal, family, or household
    purposes**." Cal. Civ. Code § 1788.2(e) (emphasis added). In other
26  words, a state court that chose to force plaintiffs to satisfy
    the Rosenthal Act's statutory text would compel similar
27  absurdities to those discussed herein.
28

14

ordinary business of life," <u>Holy Trinity Church</u>, 143 U.S. at 460, for almost anyone. Congress could not have intended such a result. And, in fact, as the Ninth Circuit has recognized, the FDCPA's legislative history makes clear that "Congress designed the Federal Act to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" <u>Swanson v. S. Or. Credit Serv.</u>, 869 F.2d 1222, 1225 (9th Cir. 1988) (quoting S. Rep. No. 382 at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699).

To sum, applying the canon against absurdities ensures that the FDCPA will "receive a sensible construction." <u>United States v. Kirby</u>, 74 U.S. 482, 486-87 (1868).

### D. Policies underlying the FDCPA

Sound policy reasons also counsel against placing the burden on the plaintiff as defendants urge. Because dunning the wrong person is among the most unfair of debt collection practices, the FDCPA should be interpreted in a manner that incentivizes debt collectors to ensure that they direct their efforts at the right person.

Requiring wrongly-targeted plaintiffs to prove the nature of the obligation being sought would have precisely the opposite effect.

In most such cases, plaintiffs lack any practical method to determine the nature of an underlying obligation. Such a determination would require the following steps:

15

1.  Obtaining documents through discovery that memorialize the alleged obligation, *e.g.*, credit card statements or a promissory note. Since it is the end use of any purchases that determines whether the obligation was incurred for "personal, family, or household purposes," it is likely that the testimony of the person who incurred the debt would be required to characterize the proceeds' use.

2.  Locating the person who actually incurred the obligation. The difficulty of this step should not be understated, given that debt collectors are in the business of locating debtors, and therefore (presumably) quite skilled at it. To require wrongly-dunned plaintiffs (or their attorneys) to be better at locating alleged debtors than debt collectors themselves is the quintessence of an absurdity.

3.  Subpoenaing the actual obligee's testimony for deposition. Note that an individual who allegedly owes a debt, but has to date been left alone by debt collectors, is unlikely to voluntarily testify as to the composition of that debt. And even if the actual obligee is subject to the court's subpoena power, he or she may be able to quash the subpoena as unduly burdensome. See Fed R. Civ. P. 45.[5]

---

[5] Incidentally, if the court were to adopt defendant's reading of 15 U.S.C. § 1692a(5), then it would certainly have to deny the instant motion as premature. This action recently commenced and plaintiff has had no opportunity to conduct the arduous efforts that would be required to obtain documents from the alleged original creditor, locate the real "Larry Dean Davis" (an individual last known to be in Texas), and then compelling and

16

1

2   Congress could not have intended to erect such hurdles.

3       Finally, even this line of reasoning assumes that there

4   actually *is* an underlying debt to collect. Debt collectors

5   sometimes try to collect nonexistent debts. <u>See</u>, <u>e.g.</u>, <u>Tourgeman</u>

6   <u>v. Collins Fin. Servs.</u>, __ F.3d __, 2014 WL 2870174, 2014 U.S.

7   App. LEXIS 11940 (9th Cir. Jun. 25, 2014) ("According to

8   Tourgeman, he completed repayment within two years of buying the

9   computer. But Dell Financial's records reflected otherwise.

10  Tourgeman's allegedly outstanding debt therefore was charged off

11  and then sold, along with more than 85,000 other Dell Financial

12  debts, to Collins Financial Services."); <u>Chiverton v. Fed. Fin.</u>

13  <u>Grp., Inc.</u>, 399 F. Supp. 2d 96, 99 (D. Conn. 2005) ("The

14  defendant told Chiverton that it had purchased the debt Chiverton

15  owed to Fleet Bank and was trying to collect it. Chiverton again

16  disputed the debt and informed the defendant that he had

17  satisfied the debt in full. This time, Chiverton faxed the

18  defendant copies of documents verifying that the debt was no

19  longer outstanding."). And how are individuals to protect

20  themselves from unscrupulous debt collectors who invent debts out

21  of whole cloth? It may be months or years before law enforcement

22  became aware of, and could halt, such activities.

23      In <u>Tourgeman</u>, the Ninth Circuit emphasized that, in enacting

24  the FDCPA, "Congress intended to achieve its goal of regulating

25  debt collectors' conduct by motivating consumers to bring

26  enforcement actions if they are the targets of unlawful

27  _____

28  conducting his deposition.

17

1  collection efforts." Id., 2014 WL 2870174 at *6, 2014 U.S. App.

2  LEXIS 11940 at 20. To exempt collection activities directed at

3  the wrong individual from FDCPA coverage would undoubtedly

4  undermine this goal. Ultimately, "[b]ecause the FDCPA . . . is a

5  remedial statute, it should be construed liberally in favor of

6  the consumer." Clark v. Capital Credit & Collection Servs. Inc.,

7  460 F.3d 1162, 1176 (9th Cir. 2006) (quoting Johnson v. Riddle,

8  305 F.3d 1107, 1117 (10th Cir. 2002)).

9  **III. CONCLUSION**

10      For the reasons set forth above, defendants' motion for

11  summary judgment (ECF No. 36) is DENIED.

12      IT IS SO ORDERED.

13      DATED:  August 6, 2014.

14

15

16

17      _____

18      LAWRENCE K. KARLTON
        SENIOR JUDGE

19      UNITED STATES DISTRICT COURT

20

21

22

23

24

25

26

27

28